## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF: | ) |
| | ) |
| HEDSTROM CORPORATION, | ) Bankruptcy No. 04 B 38543 |
|     Debtor, | ) |
| | ) |
| HEDSTROM CORPORATION, et al., | ) |
|     Plaintiff | ) |
| v. | ) |
| | ) Adversary Nos. |
| DIRECT AIR DISTRIBUTING CORPORATION | ) 05 A 01567 |
| OHIO EDISON | ) 05 A 01589 |
| O'LAUGHLIN & COMPANY | ) 05 A 01590 |
| PENELEC | ) 05 A 01592 |
| WARP TECH INC | ) 05 A 02105 |
| WASHINGTON PENN PLASTICS CO. INC. | ) 05 A 02106 |
| MACSTEEL SERVICE CENTERS USA, INC. | ) 05 A 02118 |
| OLYMPIC STEEL INC. | ) 05 A 02124 |
|     Defendants | ) |

## FINDINGS OF FACT AND CONCLUSIONS OF
## LAW ON BIFURCATED COMMON ISSUES

This matter comes before the Court at the trial of certain issues common to the ten-captioned

Adversary proceedings and on the Complaints (or First Amended Complaints, as may be applicable)

in those proceedings of Hedstrom Corporation and certain of its affiliates (herein "Plaintiffs" or the

"Debtors")[1] filed against Direct Air Distributing Corp., Ohio Edison, O'Laughlin & Company,

Penelec, Tranzact Technologies, Direct Guarantee Staffing, Warp Tech Inc., Washington Penn

Plastics Co. Inc., Macsteel Service Centers USA, Inc. (each a "Defendant," and together the

"Defendants").

---

[1] The Debtors include (1) Hedstrom Corporation (Debtor at Case No. 04-38543), (2) Ero, Inc. (Debtor at Case No. 04-38546), (3) Ero Industries, Inc. (Debtor at Case No. 04-38543), (4) Ero Canada, Inc. (Debtor at Case No. 04-38553), and (5) Priss Prints, Inc. (Debtor at Case No. 04-38555).

The Debtors' Complaints seek to avoid certain transfers made to the Defendants pursuant to 11 U.S.C. § 547(b) and to recover those transfers pursuant to 11 U.S.C. § 550.[2] In accordance with the pretrial conference held under Fed. R. Civ. P. 16(c)(12) and (13) and this Court's Final Pretrial Order entered under Fed. R. Civ. P. 16(e), made applicable by Fed. R. Bankr. P. 7016, a limited bifurcation on the subject Complaints was ordered for trial on the common factual issues of: (1) whether the Debtors were insolvent at the time of the transfers in issue; and (2) whether the transfers enabled the Defendants to receive more than they would have received in a Chapter 7 bankruptcy. For the reasons set forth below, the Court finds and concludes in favor of Plaintiffs on both of these issues. Defendant did not object to Plaintiff's documents or file proposed Findings of Fact and Conclusions of Law. Pursuant to Final Pretrial Order, it has waived legal objections and withdrawn any dispute to Plaintiff's proposed Findings.

## FINDINGS OF FACT

### A. Background

1.      The Debtors' bankruptcy proceedings (the "Bankruptcy Cases") commenced on October 18, 2004 (the "Petition Date") when they filed voluntarily petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois (the "Court"). On October 19, 2004, the Court entered an order directing that the Debtors' cases be jointly administered as Case No. 04-38543. Currently, the Bankruptcy Cases are pending before this Court, and therefore, pursuant to 28 U.S.C. § 1409(a), this Court is

---

[2] In addition, two of the Debtors' Complaints - Complaints against O'Laughlin & Company and Penelec - have been amended to include claims arising under 11 U.S.C. § 549.

the proper venue for the above-captioned adversary proceedings. [Plaintiffs' Complaint ("PC") at

¶¶ 3 and 4].[3]

     2.     This action is a civil proceeding arising under Title 11, United States Code (the

"Bankruptcy Code"),[4] or arising in or related to a case under the Bankruptcy Code within the

meaning of 28 U.S.C. § 1334. [PC at ¶ 1]. This is a core proceeding pursuant to 28 U.S.C. §§

157(b)(2)(A), (E), (H), and (O) because it involves matters concerning the administration of the

Debtors' estates, a potential order to turn over property of the estates, a determination, avoidance

and recovery of preferential payments, and because it is a proceeding affecting the liquidation of

the Debtors' assets.  [PC at ¶ 2].

     3.     As reflected in the Debtors' Schedules filed with the Court on December 3, 2004

(together the "Schedules"), as of the Petition Date, the Debtors' total liabilities greatly exceeded

the Debtors' total assets. [Plaintiffs' Exhibit 1 through 5]. The Court takes judicial notice of the

Schedules in addition to its prior orders entered in the Debtors' Bankruptcy Cases.  *See In re*

*UNR Industries, Inc.*, 212 B.R. 295, 306 (Bankr. N.D. Ill. 1995); *In re Homer-Radtke*, 305 B.R.

846, 848 (Bankr. N.D. Ill. 2004) (citing *In re Pearson Indus., Inc.*, 178 B.R. 753, 766 (Bankr.

C.D. Ill. 1995) (the court can take judicial notice of its own records and orders).

### B. The Secured Lenders' Claims

     4.     Congress Financial Corporation (Central) ("Congress") was a secured creditor in

the Debtors' Bankruptcy Cases that financed the Debtors' operations through a revolving loan; as

of the Petition Date, Congress had an allowed secured claim of no less than $11,184,250.78.

---

[3] Plaintiffs' filed a substantially similar form of Complaint against all the Defendants that includes identical allegations as to all the common issues before this Court.

[4] References to the Bankruptcy Code are made to the Bankruptcy Code in effect as of October 18, 2004, the date the Debtors filed their petitions for relief.

[Plaintiffs' Exhibit 11]. Congress' indebtedness was secured by a first lien in the Debtors' accounts receivable, inventory and proceeds, as well as a second lien in the collateral of CSFB (as defined below). [Plaintiffs' Exhibit 12].

5.      Credit Suisse First Boston, N.A. as Agent ("CSFB" and together with Congress, the "Secured Lenders") is a secured creditor in the Debtors' Bankruptcy Cases that financed the Debtors' prepetition operations through a term loan; as of the Petition Date, CSFB had an allowed secured claim of no less than $114,694,780.73 [Plaintiffs' Exhibit 13]. CSFB's indebtedness was secured by the Debtors' equipment, general intangibles, and real estate as well as a second lien on Congress' collateral. [Plaintiffs' Exhibit 12]. In addition, CSFB was granted a replacement lien on avoidance actions under chapter 5 of the Bankruptcy Code to secure CSFB's loans in an amount equal to the aggregate diminution, if any, in value of CSFB's prepetition collateral. [Plaintiffs' Exhibit 13].

## C. The Debtors' Priority Claims

6.      As reflected in the Debtors' Schedules, the following unsecured priority claims were scheduled by the Debtors: Hedstrom Corporation scheduled $1,420,163.28 in priority claims; ERO Canada, Inc. scheduled $2,071.27 in priority claims; ERO Industries, Inc. scheduled $423,400.60 in priority claims; ERO, Inc. scheduled $0 in priority claims; and Priss Prints, Inc. scheduled $88.00 in priority claims. [Plaintiffs' Exhibits 1 through 5].

7.      As of March 19, 2006, the following unsecured priority claims had been filed in the Debtors' Bankruptcy Cases: $6,229,401.17 in priority claims were filed against Hedstrom Corporation; $1,887,817.93 in priority claims were filed against Ero Canada, Inc.; $1,968,933.44 in priority claims were filed against ERO Industries, Inc.; $1,904,630.88 in priority claims were

filed against ERO, Inc.; and $1,941,390,94 in priority claims were filed against Priss Prints, Inc. [Plaintiffs' Exhibits 6 through 10 submitted under F.R.E. 1006].

### D. The Debtors' Unsecured Claims

8.      As reflected in the Debtors' Schedules, the following general unsecured claims were scheduled by the Debtors: Hedstrom Corporation scheduled $12,118,579.39 in unsecured claims; ERO Canada, Inc. scheduled $12,348.38 in unsecured claims; ERO Industries, Inc. scheduled $2,715,309.73 in unsecured claims; ERO, Inc. scheduled $0 in unsecured claims; and Priss Prints, Inc. scheduled $706,511.69 in unsecured claims.  [Plaintiffs' Exhibits 1 through 5].

9.      As of March 19, 2006, the following general unsecured claims had been filed in the Debtors' Bankruptcy Cases: $14,983,800.64 in unsecured claims were filed against Hedstrom Corporation; $1,288,937.54 in unsecured claims were filed against Ero Canada, Inc.; $2,192,137.08 in unsecured claims were filed against ERO Industries, Inc.; $1,314,963.50 in unsecured claims were filed against ERO, Inc.; and $1,742,562.25 in unsecured claims were filed against Priss Prints, Inc. [Plaintiffs' Exhibits 6 through 10 submitted under F.R.E. 1006].

### E. The Debtors' Asset Dispositions

10.     After the Petition Date, this Court entered a number of orders authorizing the sale of the Debtors' assets.  Those sales, the bulk of which are summarized below, combined with the collection of the Debtors' outstanding accounts receivable, represent the proceeds from the orderly liquidation of substantially all of the Debtors' assets.  In aggregate, the liquidation of the Debtors' assets has yielded approximately $30 million for the Debtors' estates.

11.     The sales approved by the Court include the following:

(A) On October 29, 2004, this Court entered an order approving a sale of the Debtors' BBS Industries division to Victory Lane Oil, Inc. free and clear of all liens, claims and encumbrances for $8 million. [Plaintiffs' Exhibit 14].

(B) On December 14, 2004, this Court entered an order approving a settlement related to the sale of the Debtors' Priss Prints, Inc. division that provided for the first $300,000 of sale proceeds to the Debtors [Docket Entry No. 210].

(C) The Debtors also received court approval to sell certain assets via auction. [Docket Entry No. 249]. In addition to various assets including machinery and equipment, certain of the Debtors' real estate in Hazlehurst, Georgia was auctioned off resulting in proceeds of approximately $520,000.

(D) On December 27, 2004, this Court entered an order approving a sale of the Debtors' finished inventory that they were unable to sell to their prepetition customers to Big Lots, Inc. free and clear of all liens, claims and encumbrances for $2,295,057. [Plaintiffs' Exhibit 15].

(E) On January 18, 2005, this Court entered an order approving a sale of the Debtors' equipment and assets formerly located at their Bedford, Pennsylvania facility to Corporate Assets Inc. free and clear of all liens, claims and encumbrances for $4,625,000. [Plaintiffs' Exhibit 16].

(F) On January 25, 2005, this Court entered an order approving a sale of the Debtors' real estate in Ashland, Ohio free and clear of certain liens, claims and encumbrances for $50,000. [Plaintiffs' Exhibit 17]. On the same day, this Court also entered an order approving a sale of the Debtors' swing set inventory to Big Lots, Inc. free and clear of all liens, claims and encumbrances for $675,000. [Plaintiffs' Exhibit 18].

(G) On April 13, 2006, this Court entered an order approving a sale of the Debtors' Bedford, Pennsylvania real estate to Compton Management, LLC free and clear of all liens, claims and encumbrances for $1,922,000. [Plaintiffs' Exhibit 19].

12.    In addition to the foregoing sales, this Court approved several smaller asset dispositions including the sale of: the Debtors' furniture, fixtures and equipment for $12,500 [Plaintiffs' Exhibit 20]; certain licensed inventory to KB Toys Inc. for 25,214 [Plaintiffs' Exhibit 21]; certain licensed inventory to Tee-Zed Products Pty Ltd. for $275,000 [Plaintiffs' Exhibit 22]; and certain inventory to Ty's Toybox, LLC for $7,789 [Plaintiffs' Exhibit 23].

13.    With respect to each of the foregoing Court-approved sales, the Court determined that the sale represented the highest and best offer for the assets, that the sale provided an equal or greater recovery for the Debtors' estates than would be provided by an other practical alternative, that the assets had been extensively marketed and that the sale was in the best interest

of the Debtors' estates, and/or that the Debtors had demonstrated a sound business purposes for the sale. [Plaintiffs' Exhibits 14 through 23].

14.     In addition, while the Debtors sold certain of their accounts receivable in connection with the BBS sale, since the Petition Date, the Debtors have collected approximately $11.4 million in accounts receivable that were not sold to Victory Lane Oil, Inc. - accounts receivable that had a face value of less than $16.3 million as of the Petition Date.

15.     While the proceeds of the foregoing sales and the collections of accounts receivable have been (or will be) used to pay down the Secured Lenders' claims, as a result of the magnitude of their allowed claims, there still remains a significant deficiency on the Secured Lenders' claims. As evidenced by the record in this case, CSFB is currently owed in excess of $94 million on its secured claim and the Debtors' have no remaining assets that might be used to significantly reduce the same. In addition, any allowed administrative and priority claims (including any allowed 11 U.S.C. § 507(b) priority claim in favor of CSFB) must be paid prior to the payment of any sums to general unsecured creditors in the underlying Bankruptcy Cases.

**F. The Debtors' Preference Claims Sales**

16.     As of June 5, 2006, this Court had entered orders approving compromises of the Debtors' claims arising under 11 U.S.C. § 547 in the aggregate amount of $1,639,969.74. [Plaintiffs' Exhibits 24 through 40]. The aggregate claims asserted against the Defendants in these consolidated actions total $2,826,696.69.[5] [Plaintiffs' Exhibit 24].

---

[5] Reflected in this $2,826,696.69 number are claims asserted against Tranzact Technologies and Direct Guarantee Staffing that total $700,484.44. The Debtors are seeking Court approval to compromise these claims for a total of$4,000.

### G. The Debtors Were Insolvent And The Defendants Received More Than They Would Have In A Chapter 7 Liquidation

17.     With regard to the issue of the Debtors' insolvency, 11 U.S.C. § 547(f) provides that the Debtors are presumed to have been insolvent during the preference period. In addition, both the Debtors' Schedules and the actual results from the sales of the Debtors' assets establish that the Debtors were insolvent during the 90 days prior to the Petition Date.

18.     As to whether the transfers enabled the Defendants to receive more than they would have received in a Chapter 7 liquidation, the Court also finds in the Debtors' favor. Because the allowed claims of the Secured Lenders exceed the value of the Debtors' assets by not less than $94 million and because none of the Secured Lenders' collateral proceeds would have been available to pay the claims of unsecured creditors in a Chapter 7, each of the Defendants received more through the asserted preferential transfers than it would be entitled to in a Chapter 7.

19.     In other words, since the Debtors' assets were sold through a series of well-marketed, orderly sales that maximized the value of their assets, a Chapter 7 liquidation certainly could not have produced a greater dividend. As it appears that even under the most optimistic of scenarios, general unsecured creditors of the Debtors will receive a *de minimis* dividend on their claims in the underlying Bankruptcy Cases (assuming the Debtors liquidate the remaining preference actions at their face amount, assuming CSFB lacks a claim under § 507(b), and assuming allowed priority claims are paid in full), each of the Defendants clearly received more through the asserted preferential transfers than it would have received in a Chapter 7 liquidation.

20.     Any facts set forth in the Conclusions of Law will stand as additional Findings of Fact.

## CONCLUSIONS OF LAW

A.     Under § 547 of the Bankruptcy Code, pre-bankruptcy preferential transfers of a

debtor's property or payments by a debtor made while insolvent may be recovered. 11 U.S.C. §

547(b). To recover a payment as a preference, it must be proved that it was: (1) to or for the

benefit of a creditor; (2) for or on account of an antecedent debt; (3) made while the debtor was

insolvent; (4) on or within 90 days before the debtor filed its bankruptcy petition; and (5) enabled

the creditor to receive more than it would have received had the debtor not made the payment.

11 U.S.C. § 547(b); *In re Energy Co-op., Inc.*, 832 F.2d 997, 999-1000 (7th Cir. 1987). All of

these elements must be established to avoid a transfer. *Barash v. Public Finance Corp.*, 658 F.2d

504, 507 (7th Cir. 1981). The Debtors have the burden of proving the first, second, fourth and

fifth elements of § 547(b) by a preponderance of the evidence. 11 U.S.C. § 547(g); *In re

Prescott*, 805 F.2d 719, 726 (7th Cir. 1986).

B.     As to the third element, insolvency, the Debtors are presumed as a matter of law

to be insolvent during the ninety days prior the Petition Date. 11 U.S.C. § 547(f); *see also

Barash*, 658 F.2d at 507. This presumption is not conclusive and may be rebutted by the

Defendants. *See Matter of Taxman Clothing Co., Inc.*, 905 F.2d 166, 168 (7th Cir. 1990); *Steege

v. Affiliated Bank/North Shore National (In re Alper-Richman Furs, Ltd.)*, 147 B.R. 140, 153

(Bankr. N.D.Ill. 1992).

C.     Insolvency is defined in the Bankruptcy Code as a "financial condition such that

the sum of [an] entity's debts is greater than all of such entity's property, at fair valuation . . . ."

11 U.S.C. § 101(32). "Fair valuation" for purposes of § 101(32) is generally defined as the going

concern or fair market price "[u]nless a business is on its deathbed." *Utility Stationery Stores,

Inc. v. Southworth Company (In re Utility Stationery Stores, Inc.)*, 12 B.R. 170, 176 (Bankr.

- 9 -

N.D.Ill. 1981). Under those circumstances, a liquidation value should be used to value the assets. *Matter of Taxman Clothing Co., Inc.*, 905 F.2d 166, 170 (7th Cir. 1990); *Fryman v. Century Factors, Factor for New Wave (In re Art Shirt Ltd.)*, 93 B.R. 333, 341 (E.D.Pa. 1988); *Neuger v. Casgar (In re Randall Construction)*, 20 B.R. at 183-84.

      D.      In general, the sale of substantially all of the Debtors' assets after the filing of a petition for relief, as is the case here, is an accurate measure of the Debtors' assets and insolvency. *In re CXM*, 336 B.R. 757, 761 (Bankr. N.D.Ill. 2006). While the Debtors' Schedules reflect liabilities far in excess of their assets, it is appropriate under circumstances such as those found here to value the assets at the value actually achieved in the open market. As this Court has noted, "[i]n the last analysis, all sophisticated valuations must yield to the realities of the marketplace." *Schwinn Plan Committee v. AFS Cycle & Co., Ltd. (In re Schwinn Bicycle Co.)*, 192 B.R. 477, 488 (Bankr. N.D.Ill. 1996) (citation omitted).

      E.      Based upon the foregoing, the Court finds that the consolidated Defendants have not rebutted the presumption of insolvency as set forth at 11 U.S.C. § 547(f). Nonetheless, even if the Defendants had rebutted the presumption of insolvency, the sales of the Debtors' assets pursuant to 11 U.S.C. § 363 actually yielded a substantial amount less than would be required to satisfy the Debtors' liabilities. Accordingly, there is no question that the Debtors' debts far exceeded their assets during the ninety days prior to the Petition Date. Section 547(b)(3) has been satisfied in these consolidated actions.

      F.      Finally, as the evidence clearly indicates that general unsecured creditors are likely to receive nothing on their claims in the underlying Bankruptcy Cases, the fact that the Defendants herein received anything in payment of antecedent debts allowed them to receive more than they would under a Chapter 7 liquidation of the Debtors' assets. Accordingly, Section

547(b)(5) is also satisfied in these consolidated actions. *Taunt v. Fidelity Bank of Michigan (In re Royal Golf Products Corp.)*, 908 F.2d 91, 95 (6th Cir. 1990) (court required to conduct the § 547(b)(5) preference analysis as of the date the bankruptcy petition is filed); *Schwinn Plan Committee v. AFS Cycle & Co., Ltd. (In re Schwinn Bicycle Co.)*, 182 B.R. 514, 523 (Bankr. N.D.Ill. 1995) ("collateral should be valued for purposes of a hypothetical liquidation under § 547(b)(5) as of the date the bankruptcy petition was filed.").

      G.      Since the issues hereby determined were set for trial under Fed. R. Civ. P. Rule 16(e) as adopted by Fed. R. Bankr. P. 7016 which controlled the procedure for determining the issues thereby bifurcated, the Defendants are bound hereby and will be foreclosed form offering any evidence at their separate trial on the issues hereby determined.

      H.      For the reasons stated above, these Findings and Conclusions are entered in each of the ten consolidated Adversary Cases appearing in the caption of this order that is still pending. Further individual trials on the remaining issues as to each of the Defendants will be scheduled and held, following which appropriate final judgments will be entered. The foregoing Findings of Fact and Conclusion of Law are made by this Court pursuant to Fed. R. Bankr. P. 7052. Pursuant to Fed. R. Bankr. P. 7016, each Defendant is barred from offering any evidence on the issues hereby decided.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this _____ day of June 2006.

- 11 -